IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kenneth Syncere Rivera, a/k/a Kenneth D. Rivera, a/k/a Kenneth Rivera, <br><br> Plaintiff, <br><br> vs. <br><br> Bryan P. Stirling, Director; Joseph McFadden, Warden; Ryshema Davis, Nutritionist IV; Mr. Jones, FSS IV; Mr. Contino, Chaplain, <br><br> Defendants. | Civil Action No.: 8:15-cv-04482-JMC-JDA <br><br><br><br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

This matter is before the Court on a motion to dismiss and for designation as a strike filed by Defendants [Doc. 18] and motions for extension of time to prepare a defense [Doc. 30], to compel [Doc. 33], and for appointment of counsel [Doc. 38] filed by Plaintiff. Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on November 2, 2015,[1] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. [Doc. 1.] Defendants filed a motion to

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on November 2, 2015. [Doc. 1-2 (Complaint received by prison mailroom on November 2, 2015).]

dismiss and for designation as a strike on February 18, 2016. [Doc. 18.] The following day, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 19.] Plaintiff filed a response in opposition to Defendants' motion on March 2, 2016. [Doc. 21.] Defendants filed a reply on March 14, 2016. [Doc. 23.] Defendants' motion for protective order [Doc. 25] preventing Plaintiff from seeking discovery until the Court ruled on Defendants' motion to dismiss was granted on April 7, 2016 [Doc. 27]. Subsequently, Plaintiff moved for an extension of time to prepare his defense against Defendants' protective order [Doc. 30], to compel discovery [Doc. 33], and for appointment of counsel [Doc. 38]. Defendants oppose Plaintiff's motion to compel [Doc. 35] and Plaintiff's motion to appoint counsel in this action [Doc. 39]. Accordingly, the motions are ripe for review.

## **BACKGROUND**[2]

Plaintiff states he entered the custody of the South Carolina Department of Corrections ("SCDC") on March 9, 2015 to serve a fifteen-year sentence. [Doc. 1 at 3.] Plaintiff explains that he is a Muslim, and on March 15, 2015, while in Reception and Evaluation ("R & E") at Kirkland Correctional Institution ("KCI"), he filed a request with the Chaplain for a vegetarian diet. [*Id.*; Doc. 1-1 at 2.] The Chaplain acknowledged his request and explained that per the Warden's policy, an alternate diet was not available to R & E

---

[2] The facts included in this background section are taken directly from Plaintiff's Complaint. [Doc. 1.]

inmates; however, once at permanent yard, Plaintiff could apply for an alternate diet. [Doc. 1-1 at 2.] Plaintiff filed two more requests for a vegetarian diet on May 7, 2015 [Doc. 1-1 at 3] and on May 15, 2015 [Doc. 1-1 at 4]. The Chaplain again responded that a vegetarian diet was not available in R & E and Plaintiff could apply for an alternate diet once at permanent yard. [Docs. 1-1 at 3–4.]

On May 28, 2015, Plaintiff was transferred from KCI to Lieber Correctional Institution ("LCI"). [Doc. 1 at 3.] Once at LCI, Plaintiff requested a vegetarian diet due to his Muslim faith. [Doc. 1 at 3.] Plaintiff states he was informed his vegetarian diet would commence on August 1, 2015. [*Id.*] On July 25, 2015, Plaintiff filed a "Request to Staff Member" Form with the Chaplain, reminding SCDC that he was to start his vegetarian diet on August 1, 2015. [Doc. 1-1 at 5.] He received an affirmative response that his vegetarian meals were to begin on August 1, 2015. [*Id.*]

On August 3, 2015, Plaintiff filed a "Request to Staff Member" Form with the Chaplain, stating he had not yet received his vegetarian diet. [Doc. 1-1 at 6.] The Chaplain responded that Plaintiff was on the diet list and forwarded a copy of Plaintiff's request to the cafeteria. [*Id.*] The same day, Plaintiff also filed a "Request to Staff Member" Form with Mr. Jones in food service, informing him that he had not yet received his vegetarian diet. [Doc. 1-1 at 7.] The following day, Plaintiff filed a "Request to Staff Member" Form with nutritionist Ryshema Davis, stating he had not yet received his vegetarian diet. [Doc. 1-1 at 8.] Davis forwarded Plaintiff's request to LCI food service. [*Id.*]

On August 5, 2015, Plaintiff filed two additional requests, stating that he was "not

3

receiving his peanut butter and cereal at breakfast like other vegetarians." [Doc. 1-1 at 9–10.] On October 2, 2015, Plaintiff filed a "Request to Staff Member" Form with food service, stating that he was not receiving his B-12 drink during the week and that the vegetarian meals were "inadequate with improper portions." [Doc. 1-1 at 13.] A staff member responded, stating that the drink was being sent to Plaintiff's unit every day and he did not understand why it was not being served. [*Id.*]

On October 15, 2015, Plaintiff filed a Step 1 Grievance (LCI-1008-15), stating that he was not receiving his B-12 vitamin drink, nor was his vegetarian diet adequate, as he was receiving the same vegetables for lunch and dinner and the portions were small and cold. [Doc. 24-1 at 1.] On October 22, 2015, Plaintiff filed a second Step 1 Grievance (LCI-1032-15), asserting that food service was not respecting the dietary law of his religion and that he was not receiving proper portions of his vegetarian diet, including not receiving his B-12 drink on weekdays. [Doc. 1-1 at 1.] Plaintiff further grieved that not only was the diet inadequate, but the food was always cold. [*Id.*]

Plaintiff alleges it took four months after he complained he did not eat meat to receive his vegetarian diet. [Doc. 1 at 3.] Plaintiff states that during this time, because he does not eat meat, he had to limit his meals. [*Id.*] Plaintiff further asserts that once he received his diet, the meals were inadequate, did not meet the daily caloric requirements, and were "served out of the food box that holds meat products." [*Id.* at 4.] Plaintiff asserts that SCDC employees knew of his Muslim beliefs, yet refused to abide by the dietary laws dictated by those beliefs. [*Id.*] Plaintiff alleges that SCDC employees even sent him meat

4

products in retaliation for involving Al-Ansari, a Muslim SCDC Chaplain.  [*Id.*]

Plaintiff argues that Defendants violated his rights under the Free Exercise Clause of the First Amendment.  [*Id.* at 2.]  He seeks compensatory and punitive damages, injunctive relief, costs, and any additional relief the Court deems just, proper, and equitable.  [*Id.* at 5.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him.  *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Requirements for a Cause of Action Under § 1983

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating

5

federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658

6


(4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief. When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan*

*Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 (Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

Defendants argue that Plaintiff's Complaint must be dismissed because Plaintiff has failed to properly exhaust his administrative remedies, the Eleventh Amendment bars Plaintiff's claims against them in their official capacities, Plaintiff's claims for injunctive relief are moot, Plaintiff has failed to assert a violation of his First Amendment rights, and Defendants are entitled to qualified immunity. [Doc. 18-1.] Further, Defendants assert that Plaintiff's action is frivolous, malicious, and fails to state a claim upon which relief may be

9

granted pursuant to 28 U.S.C. § 1915(g) and this action should be designated as a strike. [*Id.*] The Court agrees Plaintiff failed to exhaust his administrative remedies before filing the instant lawsuit.[3]

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted).

Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate

---

[3] Although Defendants submitted matters outside the pleadings for the Court's consideration, the undersigned declined to consider these materials. Because the Court did not consider any materials outside of the pleadings, the undersigned did not convert Defendants' motion to dismiss under Rule 12(b)(6) into one for summary judgment. *See, e.g., Strickland v. Turner*, No. 9:15-cv-275, 2016 WL 1570166, at *4 n.1 (D.S.C. Apr. 19, 2016) (noting that "[w]hen a defendant uses evidence outside the pleadings to support a motion to dismiss under Rule 12(b)(6), the court cannot consider that evidence without converting the motion into one for summary judgment and, before deciding the motion, giving all parties a reasonable opportunity to present all the material that is pertinent") (internal quotation omitted).

10

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). Pursuant

to the SCDC Inmate Grievance Procedure, an inmate seeking to complain of prison conditions must first:

> [M]ake an effort to informally resolve a grievance by either submitting a Request to Staff Member Form or discussing it with the appropriate staff member. If informal resolution is not possible, the inmate then completes a Form 10-5, also known as a Step 1 Grievance, and submits it to the employee designated by the warden within fifteen days of the alleged incident. If the inmate is not satisfied with the decision, he may appeal to the Division Director of Operations. The appeal is accomplished by completing a SCDC Form 10-5a, also known as a Step 2 Grievance and submitting it and the Step 1 Grievance to the Institutional Inmate Grievance Coordinator within five days of the receipt of the response. The responsible official renders a final decision which is SCDC's final response. An inmate who wishes to appeal the decision has thirty days to appeal to the South Carolina Administrative Law Court ("ALC").

*James v. Jones*, No. 0:13-cv-1869, 2014 WL 3867813, at * 2–3 (D.S.C. Aug. 5, 2014) (citing *McDowell v. Ozmint*, No. 12-cv-2799, 2011 WL 2731202, at *2 (D.S.C. Nov. 5, 2011)); *see also Malik v. Ward*, 8:08-cv-1886, 2010 WL 936777, at *2 n.4 (D.S.C. Mar. 16, 2010) ("The court may take judicial notice of the SCDC grievance process.").

Plaintiff contends he exhausted his administrative remedies. As set forth above, Plaintiff filed numerous "Request to Staff Member" forms regarding his vegetarian diet. [Doc. 1-1 at 2–13.] However, relevant to the instant action, Plaintiff only pursued grievances concerning two of his claims. On October 15, 2015, Plaintiff filed a Step 1 Grievance (LCI-1008-15), stating that he was being denied his B-12 drink and was receiving an inadequate diet. [Doc. 24-1 at 1.] On October 22, 2015, Plaintiff submitted a second Step 1 Grievance (LCI-1032-15), again complaining he was receiving an inadequate vegetarian diet. [Doc. 1-1.] Grievance Number LCI-1032-15 was returned to

Plaintiff unprocessed on October 23, 2015. [Doc. 1 at 2.] Plaintiff did not file an appeal. [Doc. 1 at 2.] Plaintiff filed the instant action on November 2, 2015. [Doc. 1-2.] On January 5, 2016, Plaintiff's Grievance Number LCI-1008-15 was denied. [Doc. 24-1 at 2.] On January 25, 2016, nearly three months after he filed the present § 1983 Complaint, Plaintiff filed a Step 2 Grievance appealing Grievance Number LCI-1008-15. [*Id.* at 4.]

Based upon the foregoing, Plaintiff has failed to exhaust his administrative remedies in accordance with SCDC's applicable rules prior to filing his claims under § 1983, and thus his claims against Defendants should be dismissed. First, the Court finds Plaintiff did not properly exhaust Grievance Number LCI-1032-15. "Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC Grievance Procedure . . . . Hence, within this District, an inmate's claim is barred unless he completes Step 2 of the SCDC grievance procedure with respect to that claim." *Penza v. Patterson*, No. 8:10-cv-2361, 2011 WL 5869748, at *6 (D.S.C. Oct. 26, 2011), *Report and Recommendation adopted by* 2011 WL 5875001 (D.S.C. Nov. 21, 2011); *James*, 2014 WL 3867813, at *3. Nothing in the record demonstrates that Plaintiff appealed Step 1 of Grievance Number LCI-1032-15. [Doc. 1 at 2 (Plaintiff states he received the final agency answer on October 23, 2015, the date the Step 1 Grievance Form was returned to Plaintiff "unprocessed").] Because Plaintiff did not complete the grievance process correctly by appealing Grievance Number LCI-1032-15 (filing a Step 2 Grievance, SCDC Form 10-5a), Plaintiff failed to exhaust Grievance Number LCI-1032-15.

Second, the record demonstrates that Plaintiff's Step 2 appeal of Grievance Number

13

LCI-1008-15 was filed on January 25, 2016 [Doc. 24-1 at 4], nearly three months after Plaintiff filed the instant action; thus, Plaintiff did not properly exhaust this grievance *prior to* filing this lawsuit.  *See, e.g., Page v. Paduly*, No. 9:09-cv-0952, 2010 WL 4365644, at *1–2 (D.S.C. Oct. 28, 2010) (finding that Plaintiff failed to exhaust his administrative remedies where Plaintiff either did not properly pursue a grievance concerning the issues raised in the case prior to filing the lawsuit or did not even file his grievances until after the lawsuit had already commenced); *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (holding prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending); *Graham v. Perez*, 121 F.Supp.2d 317, 322 (S.D.N.Y. 2000) (where prisoner files grievance but fails to afford prison officials adequate time to investigate and respond before filing his complaint, prisoner has failed to exhaust available administrative remedies); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (holding a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").  When a plaintiff fails to exhaust his administrative remedies prior to filing a lawsuit, the case must be dismissed.

The record demonstrates Plaintiff failed to properly pursue Grievance Number LCI-1032-15, and further Plaintiff did not appeal Grievance Number LCI-1008-15 until after the present lawsuit had already commenced.  Consequently, Plaintiff has failed to properly exhaust his claims, and Defendants' motion to dismiss should be granted.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants'

motion to dismiss [Doc. 18 ] be GRANTED.  Further, the Court recommends Plaintiff's motions for extension of time to prepare a defense [Doc. 30], to compel [Doc. 33], and for appointment of counsel [Doc. 38] be DENIED AS MOOT.

    IT IS SO RECOMMENDED.

                                         s/Jacquelyn D. Austin
                                         United States Magistrate Judge

June 24, 2016
Greenville, South Carolina